UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHAEL GRECCO PHOTOGRAPHY, INC.,** :<br>:<br>**Plaintiff,** :<br>:<br>v. :<br>:<br>**EVERETT COLLECTION, INC.,** :<br>:<br>**Defendant.** : | Docket No. Case No. 07 Civ. 8171 |

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
# OF MOTION FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS

July 1, 2008

Nancy Wolff, Esq.
Toby Butterfield, Esq.
Zehra Abdi, Esq.
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 34th floor
New York, NY 10010
Tel.: (212) 974 7474

Attorneys for Defendant

{A062295.DOC/10}

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY ......................................................................................................... 4

ARGUMENT ................................................................................................................................. 6

    I.    MOTION FOR SUMMARY JUDGMENT STANDARD .................................................. 6

    II.    GRECCO CANNOT PROVE COPYRIGHT OWNERSHIP ............................................ 7

        (a) Plaintiff does not have Copyright Registrations in Most of the Images and thus Violates the Jurisdictional Requirements of 17 U.S.C. § 411 ............................ 7

        (b) Plaintiffs Registrations Fail to Identify the Images Covered ...................................... 8

        (c) Plaintiff's Registrations Are Accorded Little Weight under 17 U.S.C. § 410(c) and are not Prima Facie Evidence of Ownership. ........................................................... 10

        (d) In fact, Plaintiff Licensed Exclusive Rights to the Images to Others, So Cannot Prove Infringement ................................................................................................... 10

        (e) Any Copying was De Minimis. ................................................................................. 12

    III.    PLAINTIFF'S LANHAM ACT AND UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED ............................................................................................. 12

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

Federal Cases

Boisson v. Banian, Ltd.,
  273 F.3d 262 (2d Cir. 2001) ............................................................................................. 10

Carroll v. Kahn,
  2003 U.S. Dist. LEXIS 17902 at *15 (N.D.N.Y. Oct. 9, 2003) ....................................... 13

Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,
  150 F.3d 132 (2d Cir. 1998) ............................................................................................... 1

Celotex Corp. v. Catrett,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ................................................................................. 7

Chivalry Film Productions v. NBC Universal, Inc.,
  2006 U.S. Dist. LEXIS 1177 at *12 (S.D.N.Y. Jan. 11, 2006) ........................................ 13

Dastar Corp. v Twentieth Century Fox Film Corp.,
  539 U.S. 23, 123 S.Ct. 2041 (2003) ........................................................................... 12, 13

Essex Music, Inc. v. ABKCO Music and Records, Inc.,
  743 F.Supp. 237 (S.D.N.Y 1990) ....................................................................................... 4

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
  499 U.S. 340, 111 S.Ct. 1282 (1991) ................................................................................. 1

Freeplay Music, Inc. v. Cox Radio, Inc.,
  2005 U.S. Dist. LEXIS 12402 at *10 (S.D.N.Y. June 23, 2005) ..................................... 13

Gallo v. Prudential Residential Servs. Ltd. P'ship,
  22 F.3d 1219 (2d Cir. 1994) ............................................................................................... 7

Jorgensen v. Epic/Sony Records,
  351 F.3d 46 (2d Cir. 2003) ................................................................................................. 1

Kregos v. Associated Press,
  795 F. Supp. 1325 (S.D.N.Y.1992), ............................................................................. 9, 14

Odegard, Inc. v. Costikyan Classic Carpets, Inc.,
  963 F. Supp. 1328 (S.D.N.Y. 1997) ............................................................................ 10, 12

Ringgold v Black Entertainment Television,
  126 F. 3d 70 (2d Cir. 1997) .............................................................................................. 12

Sandoval v. New Line Cinema Corp.,
    147 F. 3d 215 (2d Cir. 1998) ......................................................................................... 12

Smith v. New Line Cinema,
    2004 U.S. Dist. LEXIS 18382 at *10-11 (S.D.N.Y. Sept. 13, 2004) ............................ 13

Twentieth Century Fox Film Corp. v. Dastar Corp.,
    2003 WL 22669587 (C.D. Cal. Oct. 14, 2003) ............................................................ 14

Twentieth Century Fox Film Corp. v. Marvel Enters.,
    220 F. Supp. 2d 289 (S.D.N.Y. 2002) .......................................................................... 14

Williams v UMG Recordings Inc.,
    281 F. Supp. 2d 1177 (C.D. Cal 2003) ......................................................................... 14

Zyla v. Wadsworth,
    360 F.3d 243 (1st Cir. 2004) ........................................................................................ 13

Federal Statutes

15 U.S.C. § 1125(a) ............................................................................................................. 13

17 U.S.C. § 410(a) ................................................................................................................. 9

17 U.S.C. § 410(c) ............................................................................................................... 10

17 U.S.C. § 411 ...................................................................................................................... 7

17 U.S.C. § 411(a) ............................................................................................................. 7, 9

17 U.S.C. § 501(b) ............................................................................................................. 1, 3

Federal Rules

Fed. R.Civ. P. 56(c) ............................................................................................................... 7

Federal Regulations

37 C.F.R. 202.19 .................................................................................................................... 9

Defendant Everett Collection, Inc. ("Defendant") hereby submits this Memorandum of Law in support of its motion for summary judgment dismissing all claims against it by plaintiff Michael Grecco Photography, Inc. ("Grecco").

## INTRODUCTION

Plaintiff claims it owns the exclusive copyright to various publicity photographs which Grecco took at the request of various Hollywood studios (the "Images"). Plaintiff claims that Defendant infringed upon Grecco's exclusive rights in the Images by including them in Defendant's website archive of publicity stills, and, in the case of two individual Images, by making them available to mainstream media publishers for publication. Plaintiff also claims that Defendant itself as a source of the Images, thus Defendant violated the Lanham Act, even though Defendant expressly states otherwise on its website and in its transactions with customers. For the reasons described below, Grecco cannot maintain copyright or Lanham Act claims against Defendant, even assuming that the facts are as alleged in the Complaint.

## PRELIMINARY STATEMENT

A plaintiff in a copyright case has the burden of proving copyright ownership. Copyright Act, 17 U.S.C. § 501(b). Ownership is an essential element of a copyright case. See Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991); Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998)).

Plaintiff cannot meet its burden of proving ownership, for three reasons. First, plaintiff failed to register any copyright in nearly all of the Images. Second, plaintiff cannot even prove ownership of a copyright in those Images which it *has* validly registered, as it produced documents which establish that it previously transferred its exclusive rights to each Image to the

various Hollywood studios which had commissioned them. As plaintiff retained only the exclusive right to include the Images in its own portfolio, plaintiff does not own the exclusive rights it claims Defendant infringed. Simply put, plaintiff does not have standing to allege infringement of exclusive rights it does not own. Third, even if Grecco could overcome these two substantive barriers to its copyright claims, the unrebutted evidence shows that Defendant only ever made two (2) of the Images available to any third party, and that it only received a minimal amount - $300 – from doing so. The use of these images is thus de minimis. Plaintiff therefore cannot establish its claims for copyright infringement as a matter of law, as explained further below.

First, plaintiff cannot demonstrate it has valid Certificates of Registration in the Images. Under § 411(a), it thus lacks standing to make a claim of copyright infringement. Plaintiff annexed only four actual Certificates of Registration[1] to its Complaint; the rest are mere applications. See accompanying declaration of Toby Butterfield, ("Butterfield Dec.") Ex. 1 (Complaint). Of the twenty-two images plaintiff claims have been infringed, only a handful can be attributed to an actual Registration. Id., Ex. 1, ¶ 5; Ex. 3. Further, plaintiff failed to produce the original images that correspond with these Certificates of Registration and instead produced

---

[1] The Registrations do not constitute evidence that plaintiff owns copyright in those Images: While a registration will constitute prima facie evidence of ownership, that presumption only applies when the effective date of the registration is within five years from the claimed date of first publication. According to plaintiff's own Registrations, all of the Images covered by the Registrations (the "Registered Images") were published more than five years before the effective date of the applicable Registration. For example, in the Sentinel registration, Complaint, Ex. B, the date of publication is February 5, 1996 but the date of registration is September 22, 2003, more than five years of the date of first publication. Similarly, the Xena registration lists a publication date of June 7, 1997 but an effective date of registration of December 3, 2004. And finally, the Perry registration lists a publication date of September 26, 1990 with an effective date of registration almost a full 13 years later of September 22, 2003. Since the other Form VAs annexed to the complaint are applications and thus have no date of registration, they may be disregarded entirely. As a result, under 17 U.S.C. § 410(c), the Registrations need only be accorded a minimal degree of weight by the Court.

{A062295.DOC/10}

printouts from Defendant's website, thus making it extremely difficult to discern which images were allegedly covered by which application. Id., Ex. 5.

Second, the undisputed evidence proves plaintiff does not own the exclusive rights in the Registered Images which it claims have been infringed. Without such ownership, Grecco cannot succeed on its claimed infringement of those rights. As a review of the Images themselves reveal, they are all publicity photographs. As explained further below, these publicity shots were commissioned by major television studios to help promote the television programs in question. See accompanying Declaration of Ronald Harvey dated July 1, 2008 ("Harvey Dec."), ¶ 5. These television studios distribute such publicity shots to the media in the hope that the pictures will be published along with stories about the television programs. As such, they must obtain broad rights to use these photographs and to permit third parties to publish such photographs in support of their extensive publicity campaigns, and routinely do so. Id., ¶¶ 4-5.

In discovery, Defendant therefore requested from plaintiff and obtained copies of the alleged agreements by which plaintiff granted rights in the Images to the applicable television studio. Butterfield Dec., Exs. 4, 5. The language of plaintiff's own alleged license agreements assigned all plaintiff's rights in the Images to the various studios. Id., Ex. 5. Plaintiff therefore does not own the exclusive right to the Registered Images, cannot claim its exclusive rights have been infringed,[2] and cannot maintain a case for copyright infringement of rights it assigned away. See 17 U.S.C. § 501(b); Essex Music, Inc. v. ABKCO Music and Records, Inc., 743

---

[2] In fact, far from retaining the exclusive rights to the Images, plaintiff retained only the right to use the Images in his own portfolio for the purpose of promoting his own photography, as is standard industry practice. Butterfield Dec., ¶ 5.

F.Supp. 237 (S.D.N.Y 1990) (only exclusive licensee and not his grantor may sue for later occurring infringements of such rights).

Finally, under the holding of Ringgold, any use of plaintiff's allegedly copyright protected images is de minimis and therefore not an infringement. Of the twenty-two images plaintiff claims were infringed, Defendant provided access to only two images, and the fee for these uses was minimal – only totaling $300. Such paltry and fleeting uses do not merit federal litigation. For these reasons and those described below, plaintiff's copyright and related claims should all be dismissed.

## PROCEDURAL HISTORY

Plaintiff filed this case on September 17, 2007, claiming it owns copyright in twenty two images (the "Images") of actors from the popular 1990's era television shows The X Files, Xena Warrior Princess, Frankenstein, Married with Children and Beverly Hills 90210,[3] and that Defendant infringed plaintiff's exclusive rights in those copyright by posting the images on its website and making them available to others. Complaint ¶ 52, 59. Plaintiff also claims that use of its principal's name on Defendant's website constitutes unfair competition in violation of Section 43(a) of the Lanham Act. Complaint, ¶72, 81. Plaintiff seeks injunctive relief, statutory damages, disgorgement of profits, costs, attorney's fees and prejudgment interest.

On November 9, 2007, Defendant timely answered the Complaint. Butterfield Dec., ¶ 4, Ex 2. At a November 16, 2007 initial conference before Judge McMahon, the parties

---

[3] The Images are publicity shots depicting the following: 1 image of actress Christina Applegate; 3 images of "The X Files" stars Gillian Anderson and David Duchovny; 7 images of Lucy Lawless and Renee O'Connor from the show "Xena Warrior Princess"; 9 images of various cast members from the television movie "Frankenstein"; 1 image of actor Luke Perry; and 1 image of cast members from the TV show "The Sentinel". See Butterfield Dec., Ex. 3.

{A062295.DOC/10}

4

submitted a case management plan pursuant to which discovery was to be completed by May 16, 2008. The parties unsuccessfully attempted to resolve the matter through a mediation on February 22, 2008, and on February 25, 2008, plaintiff served its first request for production of documents and notice to take the deposition of Ron Harvey. Id., ¶ 9. After a brief agreed extension of time to respond, on April 21, 2008, Defendant served written responses and objections to plaintiff's demands, produced documents, and indicated dates when Ron Harvey, Everett's principal would be available for deposition. Defendant also served its First Request for Production of Documents and First Interrogatories. Id., ¶ 10.

Plaintiff did not respond to Defendant's request for production of documents at all. Instead, on May 20, 2008, after the May 16, 2008 deadline for the completion of all discovery, plaintiff wrote to Magistrate Judge Francis alleging that there must be additional documents which Defendant should be compelled to produce, and seeking to confirm the deposition of Mr. Harvey. After Defendant pointed out that it was still willing to conduct the depositions of plaintiff and of Mr. Harvey, notwithstanding both the expiration of the discovery period and its intention to move for summary judgment, Magistrate Judge Francis refused to compel additional discovery responses unless plaintiff requested and obtained an extension of discovery from Judge McMahon. Plaintiff made no such request until Friday, June 27 , nor did plaintiff's counsel contact Defendant's counsel concerning any of the pretrial order or related materials that plaintiff is under Court order to file with the Court by July 1 until June 27, when it served Defendant with a motion to compel discovery. Id., ¶ 11. Plaintiff accordingly had many months in which to conduct discovery or to compel discovery it claims it was owed, or to seek to extend the discovery period, or to seek discovery from third parties. Plaintiff failed to do so.

While it appears plaintiff did obtain copyright registrations for some of the Images (the "Registrations," covering the "Registered Images", Images nos. 10, 11, possibly 12-20 and possibly 21 or 22), it proved extremely difficult for plaintiff to discern from the Complaint which Image was allegedly covered by which application or Registration, because plaintiff failed to produce or identify any deposit copies of the Images.  Instead, plaintiff's complaint intermingled copies of its copyright registration applications with printouts of the allegedly infringing images from Defendant's website.   Some of the applications cover hundreds of different images, none of which are identified, so without deposit copies of the Images, it was not obvious which Images plaintiff claims are covered by the Registrations.

To address this ambiguity, at the outset of the litigation, Defendant's counsel requested deposit copies of the Images allegedly covered by plaintiff's copyright registration applications, but plaintiff's counsel refused to provide them.  Id., ¶¶ 6, 7, Exs. 4, 5.  Nevertheless, by a process of elimination, Defendant worked out which Image goes with which Registration, and for the Court's convenience created the annexed chart (annexed as Exhibit 3 to the Butterfield Dec.), which numbers the Images in the order they appear in the exhibit to plaintiff's complaint, and lists each Image's title and the date plaintiff claims it was first published (where that information appears in plaintiff's copyright application), and other data about each Image.

**ARGUMENT**

**I.  MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together  with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R.Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).

While the moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact, the burden of coming forward with evidence to support the existing of a genuine issue of material fact then shifts to the non-moving party. Celotex, 477 U.S. at 323.

## II. GRECCO CANNOT PROVE COPYRIGHT OWNERSHIP

### (a) Plaintiff does not have Copyright Registrations in Most of the Images and thus Violates the Jurisdictional Requirements of 17 U.S.C. § 411

Grecco does not possess a valid Certificate of Registration in most of the Images. Butterfield Dec., Ex. 3. Under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." While the Complaint attaches various copyright application forms completed in plaintiff's name, only four of those applications were granted and bear registration numbers in the top right corner, showing they are Certificates of Registration issued by the Copyright Office. The rest are merely applications for registration dated November 2006. An application is neither a grant nor a denial of registration and so does not meet the requirements of § 411(a). As a result, plaintiff is unable to succeed on its claims for infringement of the unregistered Images, and absent such registrations, the Court lacks jurisdiction to hear such claims.

### (b) Plaintiffs Registrations Fail to Identify the Images Covered

Next, plaintiff has been unable to prove it has registered copyright in the Images he claims have been infringed. The four Certificates of Registration annexed to the complaint fail to prove plaintiff's ownership in the respective Images. Since plaintiff did not include any deposit copies to any of its Registrations, there is no indication that the images allegedly infringed are even covered by the Certificates of Registration. For example, Registration No VAu632-558 dated July 2, 2004 titled "Grecco Photography 6/4/04 to 6/30/04" (the "Grecco Registration") for "photographs" was annexed to its Complaint, but no corresponding images were included.

In response to Defendant's October 23, 2007 letter to plaintiff's counsel, Butterfield Dec., Ex. 4, requesting deposit copies, and despite subsequent formal document requests, Id., ¶¶ 10, 11, plaintiff still failed to include any deposit copies of images, instead producing over twenty pages of filenames from a CD-ROM that contained the deposit copies attached to one Registration. Plaintiff has refused to provide any evidence that its registrations include the nine specific images from the TV movie Frankenstein that were allegedly infringed.

Likewise, plaintiff failed to provide deposit materials for Registration No. VA 1-220-302 dated September 22, 2003, titled "Grecco Photography – Sentinel" (the "Sentinel Registration"), Registration No. VA 1298835 titled "Grecco Photography- Xena" dated December 3, 2004 (the "Xena Registration") and Registration No. VA 1-220-303 titled "Grecco Photography-Luke Perry" (the "Perry Registration"). The only images plaintiff produced were printouts from Defendant's website, allegedly of plaintiff's Images. The mere fact that Defendant's website happened to offer photographs of some of the characters from some popular television shows in which plaintiff also happened to have photographs is neither proof of infringement nor is it proof of plaintiff's copyright. If plaintiff had wanted to clarify the

particular images covered by its Certificates of Registrations, it had plenty of opportunity to provide deposit copies, but failed to do so.

Under 37 C.F.R. 202.19, the required deposit materials for published works must be two complete copies of the best edition of the published work. Since plaintiff filed all its applications claiming the Images were published works (see Complaint, Ex. B), the deposit material had to be two copies of the photographs as they appeared in published form. It is unclear whether plaintiff provided the printouts from Defendant's website because the Images as they appeared on Defendant's website were the deposit materials, or whether plaintiff submitted printouts because it simply did not have the deposit materials in its possession. Either way, the documents produced are inadequate to prove copyright ownership[4].

Secondly, the remaining documents plaintiff annexes in its Exhibit B to its Complaint are not certificates of registration at all; rather they are applications for a copyright registrations in certain unidentified photographs. Under the clear and unambiguous language of 17 U.S.C. § 411(a), a certificate of registration and not merely an application, is a jurisdictional prerequisite to filing an infringement suit in this Court. Kregos v. Associated Press, 795 F. Supp. 1325, 1331 (S.D.N.Y.1992), aff'd, 3 F.3d 656 (2d Cir. 1993) ("Before commencement of an action for copyright infringement, a person must register a copyright claim with the Copyright

---

[4] If plaintiff produced printouts from Defendant's website to indicate the first time the images were "published", then Plaintiff's certificates of registration are defective, because the date of publication on plaintiff's certificates of registration differs from the date Defendant actually posted the images on its website. For example, Plaintiff lists the date of first publication for the Perry registration as September 26, 1990. However, Defendants website did not upload any image of Luke Perry until approximately October 1999. See Harvey Dec., ¶ 11. Similarly, the Xena Registration lists a first publication date as June 7, 1997, but the Defendant did not upload any images of Xena until 1999. Id, ¶ 11.

Office.... Indeed, '[r]eceipt of an actual Certificate of Registration or denial of [the] same is a jurisdictional requirement.'").[5]

According to the plain language of these statutes, registration or the refusal of registration by the Copyright Office is a jurisdictional prerequisite. Without certificates of registration, plaintiff does not have standing to commence this action for infringement for the images allegedly covered by these applications.

### (c) Plaintiff's Registrations Are Accorded Little Weight under 17 U.S.C. § 410(c) and are not Prima Facie Evidence of Ownership.

Even if the images annexed to plaintiff's complaint were identical to the actual images covered by these Registrations, the registrations must be accorded only a minimal degree of weight under 17 U.S.C. § 410(c) because plaintiff made every registration more than 5 years after the photos respective dates of publication. As explained above, all the Registations which plaintiffs obtained post-dated the publication date by five years or more. A "certificate of a [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright[.]" 17 U.S.C. § 410(c); see also Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2001); Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1334 (S.D.N.Y. 1997).

### (d) In fact, Plaintiff Licensed Exclusive Rights to the Images to Others, So Cannot Prove Infringement

Plaintiff produced documents purporting to show it was the copyright holder in the various images because of the contracts it had with various television studios, namely alleged

---

[5] It is the Copyright Office, not the applicant, that "issues" a Certificate of registration, as illustrated by 17 U.S.C. § 410(a) which states: "When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office."

{A062295.DOC/10}

10

invoices between itself and MCA Television Group, Fox Broadcasting Company, Fox Television, USA Networks, UPN and Polygram records.  The documents in fact show the opposite; by the language of its own licenses, plaintiff clearly assigned all of its exclusive rights under copyright to the various television studios for which it photographed the Images.  These documents show that the only rights retained by Grecco were "personal portfolio and promotional use" See Butterfield Dec., Ex. 5.  All other exclusive rights were granted via assignment to the studios.  (For the court's convenience, Defendants prepared a chart containing the relevant language from each of plaintiff's invoices, as Butterfield Dec., Ex. 6.

       This conclusion is consistent with industry practice for all publicity stills.  Publicity departments of the movie and television studios have widely distributed publicity material to the press with the intent that the material will be published and as such promote their productions.  Harvey Dec., ¶ 4.  This is exactly the purpose behind the twenty two images that are the subject of this suit.  It is unreasonable to think that a photographer would take publicity photographs and not grant the broadest of all usage rights to the studios, because the very purpose of taking the photographs in the first place is so that they will be widely distributed and used to promote and publicizing the productions.  Id., ¶ 5.

       Publishers historically use the services of archives such as Everett to obtain these publically disseminated images instead of maintaining their own database or having to contact multiple studios when preparing an article for publication. These archives with expertise in the entertainment industry have largely made the effort to collect, organize, and maintain in a searchable database the vast amount of publicity material distributed during the past century. As publishers do not have the resources or expertise to adequately maintain publicity material, they rely on the archives to provide images spanning various time periods from a wide range of

studios and networks which would otherwise be impossible to secure from a single publicity department in a timely manner. Id., ¶ 6. This service of archiving publicity material has existed for decades and the archives are as indispensible to the studios as to publishers, who seek material for a wide range of purposes, such as articles, documentary films and other publications relating to the entertainment industry and popular culture. Id.

### (e) Any Copying was De Minimis.

Of all twenty two images Defendants are accused of copying, only two images were actually made available to two publishers, for total access fee of $300. Harvey Dec., ¶ 12. This use and subsequent access fee is trivial and must be viewed by this Court as de minimis. See Ringgold v Black Entertainment Television, 126 F. 3d 70, 74 (2d Cir. 1997) (where unauthorized copying is sufficiently trivial, the law will not impose legal consequences); Sandoval v. New Line Cinema Corp., 147 F. 3d 215, 217-18 (2d Cir. 1998)(a *de minimis* infringement of a copyrighted work is not actionable.) As Defendant has previously explained, it is not in the business of "licensing" images; it merely provides access to the images for legitimate publishers. Harvey Dec., ¶ 7. Merely providing access to two images to two publishers for a trivial fee does not warrant a federal infringement suit, which only one magazine actually used in one isolated magazine story. The images were used at most once, in one issue of one magazine. Harvey Dec., ¶ 12. These images, fleetingly featured in only one issue of a magazine long since forgotten, constitute the type of de minimis infringement.

### III. PLAINTIFF'S LANHAM ACT AND UNFAIR COMPETITION CLAIMS SHOULD BE DISMISSED

Plaintiff also claims that Defendants use of the Images without providing a photo credit to Michael Grecco Photography constitutes unfair competition in violation of the Lanham Act. In Dastar Corp. v Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S.Ct. 2041 (2003),

the Supreme Court ruled that the Lanham Act cannot be used to litigate claims concerning attribution or misattribution of authorship, or claims that are in essence copyright infringement claims. Plaintiff's 15 U.S.C. § 1125(a) claims herein of false designation of origin are exactly the type of "misuse or overextension" claims that Dastar precludes.

In Dastar, the Supreme Court concluded that in cases concerning "communicative works," the term "origin" in § 43(a) refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. Id. at 32. The Supreme Court found that there could be no Lanham Act violation where the party identified as manufacturer and producer of videotapes was in fact the manufacturer and producer of the physical videotapes. Under Dastar the only possible claim under § 43(a)(1)(A) for false statement of origin of a communicative work is a claim based on false identification of its manufacturer or producer.

Since Dastar, courts in this Circuit and others have uniformly followed this rule to dismiss such claims. See Chivalry Film Productions v. NBC Universal, Inc., 2006 U.S. Dist. LEXIS 1177 at *12 (S.D.N.Y. Jan. 11, 2006) ("failure to credit the true author of a copyrighted work is not a false designation of origin"); Freeplay Music, Inc. v. Cox Radio, Inc., 2005 U.S. Dist. LEXIS 12402 at *10 (S.D.N.Y. June 23, 2005) (same); Carroll v. Kahn, 2003 U.S. Dist. LEXIS 17902 at *15 (N.D.N.Y. Oct. 9, 2003) (dismissing plaintiff's Lanham Act claim for failure to give credit); Zyla v. Wadsworth, 360 F.3d 243, 252 (1st Cir. 2004) (holding that Dastar barred plaintiff's false authorship claim); Smith v. New Line Cinema, 2004 U.S. Dist. LEXIS 18382 at *10-11 (S.D.N.Y. Sept. 13, 2004) (citing Dastar to dismiss claim under § 43(a)(1)(A) for misattribution of authorship); see also McCarthy, *McCarthy on Trademarks,* §27:77.1 at 27-183.

{A062295.DOC/10}

13

Here, Defendant's website is correctly identified as the website in which the Images appeared, and Defendant did not claim to be either the author or the copyright owner of any of the Images that was featured on the website. In fact, Everett's terms and conditions that accompany any access of images clearly state that Everett is not the copyright owner in any of the images. Harvey Dec. ¶ 8. Plaintiff cannot therefore allege that the origin of any of the Images has been misattributed as Everett. To the extent plaintiff has any claim, which it does not, such claim is under the Copyright Act, not the Lanham Act.

Plaintiff's common law claim of unfair competition must also be denied. Following the *Dastar* Supreme Court decision, the Dastar lower court dismissed plaintiff's claims of common law unfair competition, finding that such claims are substantially congruent. Twentieth Century Fox Film Corp. v. Dastar Corp., 2003 WL 22669587 (C.D. Cal. Oct. 14, 2003) (citing Williams v UMG Recordings Inc.*,* 281 F. Supp. 2d 1177, 1186 (C.D. Cal 2003) for the proposition that "any unfair competition claim would be futile because of the congruence of Lanham Act and California unfair competition claims"). In this Circuit, the congruence of such claims has been repeatedly found. See e.g., Twentieth Century Fox Film Corp. v. Marvel Enters.*,* 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("standards for trademark infringement and dilution under New York common law are essentially the same under the Lanham Act"); Kregos v Assoc. Press*,* 795 F. Supp 1325, 1336 (S.D.N.Y. 1992), aff'd, 3 F.3d 656 (2d Cir. 1993)(standards for § 43(a) claims under the Lanham Act and unfair competition claims under New York law are virtually the same"). Therefore, plaintiff's claims for trademark infringement and unfair competition must be dismissed.

## **CONCLUSION**

There being no genuine issue of fact or law, the Court should grant Defendant's motion for summary judgment on all causes of action.

Dated:  New York, New York
          July 1, 2008

                                        COWAN DEBAETS ABRAHAMS
                                               & SHEPPARD LLP


                              By: _____/s/_____
                                        Toby M.J. Butterfield
                                        Nancy E. Wolff
                                        41 Madison Avenue - 34th Floor
                                        New York, New York 10010
                                        Tel. (212) 974-7474
                                        Fax (212) 974-8474
                                        *Attorneys for Defendant Everett
                                        Collection, Inc.*

{A062295.DOC/10}

15