UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL GRECCO PHOTOGRAPHY, INC., : Case No. 07 Civ. 8171

        Plaintiff,

v.

EVERETT COLLECTION, INC.,

        Defendant.

---

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

August 8, 2008

COWAN, DEBAETS, ABRAHAMS,
    & SHEPPARD, LLP

Nancy E. Wolff
Toby M.J. Butterfield
Zehra Abdi
41 Madison Avenue, 34th Floor
New York, New York 10010
(212) 974-7474

*Attorneys for Defendant*

{A062448.DOC/5}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

I.      Under Local Rule 56.1(b), All Facts in Defendant's 56.1 Statement Are Admitted .......... 1

      A.     Plaintiff Failed to Rebut the Evidence that It Assigned Its Copyright in its Images to Others. ................................................................................................. 5

      B.     Whether or Not the Images are "Derived" from Films or Television Shows, Defendant's Use is de minimis. ................................................................................ 7

II.     Plaintiff's false designation of origin claim must be dismissed ......................................... 8

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

Carroll v. Kahn,
  2003 WL 22327299 (N.D.N.Y. Oct. 9, 2003) ............................................................ 9

Celotex Corp. v. Catrett,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................................ 1

Dunkin' Donuts Inc. v. Barr Donut, LLC,
  242 F.Supp.2d 296 (S.D.N.Y. 2003) ....................................................................... 2

Feist Pubs., Inc. v. Rural Telephone Serv. Co.,
  499 U.S. 340, 111 S.Ct. 1282, 113 L. Ed. 2d 358 (1991) ....................................... 3

Freeplay Music, Inc. v. Cox Radio, Inc.,
  409 F.Supp.2d 259 (S.D.N.Y.2005) ........................................................................ 9

Gadsden v. Jones Lang Lasalle Americas, Inc.,
  210 F.Supp.2d 430 (S.D.N.Y.2002) ........................................................................ 2

In re Literary Works in Electronic Databases Copyright Litigation,
  509 F. 3d 136 (2nd Cir. 2007) ................................................................................. 4

Kregos v. Associated Press,
  795 F. Supp. 1325 (S.D.N.Y.1992), .......................................................................... 3

Liles v. New York City Dept. of Educ.,
  516 F. Supp. 2d 297(S.D.N.Y. 2007) ........................................................................ 2

Millus v. D'Angelo,
  224 F.3d 137 (2d Cir.2000) ....................................................................................... 2

Smith v. New Line Cinema,
  2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004) .......................................................... 9

Well Made Toy Mfg. Corp. v Goffa Inti' Corp.,
  354 F. 3d 112 (2d Cir. 2003) ( ................................................................................. 4

**STATUTES**

17 U.S.C. 411(a) ............................................................................................................ 3

# INTRODUCTION

In opposition to defendant's motion, plaintiff has failed to produce any evidence creating a genuine issue of material fact regarding its supposed copyright ownership and registration of 22 photographic images (collectively, the "Images," listed in Exhibit 3 to the Declaration of Toby Butterfield (the "Butterfield Dec.")). Despite having multiple opportunities to do so, plaintiff cannot produce certificates of registration for the Images; has failed to come forward with anything to contradict the plain language of its own license of exclusive rights in the Images to non-parties; and failed to address any of the evidence in defendant's Local Rule 56.1 statement. Plaintiff thus cannot sustain its copyright infringement claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Defendant's motion for summary judgment should be granted.

## I.  Under Local Rule 56.1(b), All Facts in Defendant's 56.1 Statement Are Admitted

Defendant filed a detailed Local Rule 56.1 Statement ("Def. 56.1") in support of its motion for summary judgment. At first, plaintiff failed to serve any papers in opposition to the motion. When defendant reminded plaintiff's counsel that the deadline to oppose had passed, plaintiff's counsel requested and obtained additional time to do so. Reply Declaration of Toby Butterfield dated August 8, 2008 (the "Reply Dec."), ¶5, Ex. A. Nevertheless, plaintiff subsequently failed to respond to Def. 56.1. Under Local Rule 56.1(b)[1], the facts therein are admitted, so defendant's motion may be granted on this ground alone.

---

[1]  Local Rule 56.1(b) states: "The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rules 56.1(b).

Courts in this circuit do not hesitate to grant motions for summary judgment on this basis. See Liles v. New York City Dept. of Educ., 516 F. Supp. 2d 297(S.D.N.Y. 2007), citing Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F.Supp.2d 430, 438 (S.D.N.Y.2002) (facts in defendant's Local Civil Rule 56.1 Statement deemed admitted when plaintiff failed to file its 56.1 statement in opposition citing admissible evidence); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir.2000) (summary judgment "appropriate" in light of non-moving party's failure to comply with Local Rule 56.1(b)); Dunkin' Donuts Inc. v. Barr Donut, LLC, 242 F.Supp.2d 296, 298 (S.D.N.Y. 2003) (facts deemed admitted because non-moving party did not submit a proper counter-statement of facts citing evidence).

The following facts are therefore admitted: that plaintiff's "Complaint attaches only four registrations ... (the "Registrations")" (Rule 56.1, ¶8); that the complaint also "attaches mere applications for registration" (id., ¶10); that "plaintiff has produced no evidence that the Registrations apply to any of the Images," (id., ¶9).

As mentioned in the Def. Mem. at 2, for purposes of this motion only, defendant conjectured that two of the photographs which appeared in defendant's website, nos. 10 and 11 in the Chart, Butterfield Dec., Ex. 3, may correspond to two Images which plaintiff claims he has registered for copyright, namely Registration No. 1220302 for an image from The Sentinel, and Registration No. 1220303 for an image of Luke Perry. However, for all plaintiff's other copyright applications, plaintiff has not and cannot show what images it attempted to register.[2]

---

[2] It is impossible to tell from the wording of plaintiff's applications what it sent to the Copyright Office. For example, one of plaintiff's few certificates of registration, Reg. NoVAu632858, is simply titled "Grecco Photography 6/4/04-6/30/04." Similarly, the remaining certificate of registration, titled "Xena Photographs," fails to identify what images were deposited and whether any of them are the Images which plaintiff now claims have been infringed. See Butterfield Dec., Ex. 5.

2

To unscramble whether plaintiff could in fact have an infringement claim concerning any of the other 20 Images, both before this case began and during discovery, defendant therefore requested deposit copies of the Images. Butterfield Dec., Ex. 4, Reply Dec., Ex. B, request nos. 7, 8, 9. Plaintiff could not produce deposit copies, however. Instead, it produced printouts of images of the cast of Frankenstein as they appeared on <u>defendant's</u> website, and printouts of filenames from a CD-ROM. Butterfield Dec., Ex. 5  For this reason, defendant's Rule 56.1 Statement asserted as uncontested facts that "Everett's counsel requested registration certificates for the remaining photographs, but Grecco did not produce them" (<u>id.</u>, ¶11); and that therefore "Grecco has not registered copyright in the remaining Images," (<u>id.</u>, ¶12).

As explained in defendant's moving memorandum (the "Def. Mem.") at pp.9-10, in the absence of a registration, this Court lacks subject matter jurisdiction to hear any copyright infringement claim concerning those works. <u>Kregos v. Associated Press</u>, 795 F. Supp. 1325, 1331 (S.D.N.Y.1992), <u>aff'd</u>, 3 F.3d 656 (2d Cir. 1993). Plaintiff cites no authority to the contrary. Registration is a jurisdictional requirement, 17 U.S.C. 411(a), and substantial similarity is an element of the claim. <u>Feist Pubs., Inc. v. Rural Telephone Serv. Co.</u>, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295-96, 113 L. Ed. 2d 358 (1991). As plaintiff has not shown evidence of either, he cannot establish his claim.

Plaintiff's opposition to this motion is virtually silent on this point. Instead, plaintiff's principal Michael Grecco vaguely asserts his belief that all images have been registered. Such bald conjecture is not enough to resist summary judgment. The court cannot simply overlook § 411(a)'s jurisdictional requirements, or expand them to include applications. Plaintiff thus could only provide a stack of undifferentiated materials, Butterfield Dec. Ex. 5, which include two copyright registrations which possibly encompass two photographs (Images 10 and 11), one

3

of which is vaguely similar to a very bad photocopy of an image which appeared for a time on defendant's website. Butterfield Dec., Ex. A (Complaint), Ex. A, tenth page. This is not enough to prevent dismissal of claims concerning all the other unregistered works. See In re Literary Works in Electronic Databases Copyright Litigation, 509 F. 3d 136 (2nd Cir. 2007) (flatly rejecting the argument that one copyright infringement claim for a registered work supports jurisdiction to hear related claims concerning unregistered works); see also Well Made Toy Mfg. Corp. v Goffa Inti' Corp., 354 F. 3d 112 (2d Cir. 2003) (dismissing claim for copyright infringement of a larger derivative version of a registered doll where claims of infringement for both dolls were brought). The Second Circuit has made clear that the existence of one registered copyright does not allow a court to exercise subject matter jurisdiction over claims of infringement of an unregistered copyright.

Defendant has requested no less than four times that plaintiff produce certificates of registration for all the Images: before the case began, Butterfield Dec., Ex. 4; before the first conference with the Court, id., ¶ 6; and Ex. 4; before and at the mediation, id., ¶¶ 5 and 9, and in document requests served during discovery. Butterfield Dec., ¶ 10, Reply Dec. Ex. B. Plaintiff failed to produce them then, and in opposition to this motion. Any that existed, and any evidence of whether they encompassed the Images, plaintiff surely would have attached them to its opposition or in response to Def. 56.1. Instead, plaintiff airily asserts that if defendant had deposed Mr. Grecco, it would have been able to determine whether Mr. Grecco's filings and/or representations were "fallacious, spurious or insufficient as a matter of law" and would not have had to make a motion. See Opp pg. 4. This obfuscation is of no merit. A deposition was not required to obtain production of these documents.

4

Plaintiff obviously cannot refute Def. 56.1, and the Court must accept as admitted the fact that defendant has not registered copyrights in any of the remaining images it claims were infringed, images numbered 1-9 and 12-22. See Butterfield Dec., Ex. 3.

### A. Plaintiff Failed to Rebut the Evidence that It Assigned Its Copyright in its Images to Others.

Plaintiff's opposition also fails to demonstrate that it did not assign all rights of usage to the studios. Plaintiff admits and defendant does not dispute that plaintiff's licenses state "All rights of usage are granted to the client". Pl. Opp. at 6. See Butterfield Dec. Ex. 6. This broad grant means that the studios could use the images in whatever manner they saw fit. If the studios chose to distribute the images for publicity purposes, they had the right to do so. If studios chose to distribute the image to an archive such as defendant's, they had the right to do so. Contrary to plaintiff's accusation that defendant's references to industry practice are made to deceive this court, defendant's explanation of the industry is highly relevant, because defendant's maintenance of the images in an archive is precisely the use for which publicity photographs of this type are intended.

To support its claim that Grecco continued to own exclusive rights to the Images, plaintiff feebly argues that in fact it managed to license them to others. Plaintiff's only evidence that it did so, either through Michael Grecco individually or by its agent, Sygma, is a handful of low value permissions. Pl. Opp. at 7.[3] A permission or a license necessarily involves a grant of rights, yet there is no indication of any such grant in these documents, let alone that Grecco itself

---

[3] As "proof" of this, Plaintiff annexes a few alleged licenses to its motion. Pl. Opp Ex. A. In fact, these documents fail to show any kind of support for this statement. First, the documents annexed are not "licenses" at all, but rather "sales reports" that contain little more than a client name, invoice number, subject and gross and net price. As plaintiff is a photography studio, it

5

was granting rights. There is no duration, no grant of rights, no terms of use, nor is there even a license fee listed. These sales reports do nothing to contradict the plain language of the invoices which plaintiff itself disclosed, and which it admits govern the terms under which it created the Images. Defendant has merely pointed out that Grecco already gave away all usage rights to the studios, a point which plaintiff does not and cannot contradict.

Second, even if these sales reports were to be construed as licenses, there is no way of knowing if the images referenced are the images at hand in this action. The document lists names under the heading "Subject", it does not attach the images, nor does it provide image descriptions. By way of example, one sales report lists "The X-Files" under the subject heading. This vague description certainly cannot be viewed as conclusive proof that plaintiff was licensing the specific images from the X-Files that are the subject of this lawsuit during the period of exclusivity.

Finally, Grecco does nothing to disprove the fact that it granted its exclusive rights away to the studios. Plaintiff even admits that it used the word "exclusive" in its license with Universal Studios, but tries to sweep that fact under the rug by annexing a letter from Leaf America addressed to Universal Television Networks, Lions Gate Television and Mr. Grecco requesting permission to use an image from the Frankenstein photo shoot in two magazines. Pl. Opp., Ex. C. Plaintiff claims that this is "irrefutable evidence" that Mr. Grecco had access to and the ability to license the images to others. Pl. Opp. at 7. This argument is unconvincing. All the letter proves is that Leaf America contacted the parties it believed responsible for licensing the images (notably, the letter was addressed first to Elizabeth Sinsabaugh at Universal and Betty

---

presumably sells prints. These sales reports do not demonstrate that plaintiff even purported to license the Images, let alone it continues to own a copyright interest in them.

Lee at Lions Gate and lastly Michael Grecco) and requested permission to use the photograph. That Michael Grecco happened to also be on the letter is of no consequence or surprise; any conscientious licensee would certainly seek to contact all possible parties before using an image whether they had the rights to give away or not.

### B. Whether or Not the Images are "Derived" from Films or Television Shows, Defendant's Use is de minimis

Defendant's de minimis argument is predicated on several uncontrovertible facts. First, only a tiny portion of the allegedly protected works have been allegedly reproduced. This is true whether plaintiff obtained one registration for a large set of photographs[4], or whether as plaintiff has suggested these images are "screen grabs" from the relevant motion pictures, in which case the frame that is captured is but one second out of a 2 hour film or television show.

Second, plaintiff's evidence of infringement consists solely of illegible photocopies of photographs. From the evidence plaintiff has provided, it is impossible to conclude that any photograph has been reproduced. Butterfield Dec., Ex. A (exhibits to Complaint). At best, there are blotchy dark shapes some of which may or may not be photographs of people.

Third, the alleged uses are admitted to be minimal. Out of the 22 Images plaintiff complains were infringed, and the apparently hundreds of different photographs included in one of plaintiff's only copyright registrations, only two were ever used by a publisher and only a minimal $200 "access" fee (as opposed to a license fee) was ever charged. Harvey Dec., ¶12. Defendant made no other use of any of the 22 Images. Defendant's Rule 56.1, ¶17. No other publisher made any use of the other Images, and defendant did not make any of the other Images

---

[4] Plaintiff's "Grecco Photography 6/4/04 to 6/30/04" application lists no less than 1500 file names, each of which is presumably a photograph. Butterfield Dec., Ex. 5.

available to be used by any other publisher. Id., ¶20. Plaintiff has offered nothing to rebut this detailed evidence that there was little or no use of the Images.[5]

## II. Plaintiff's false designation of origin claim must be dismissed

Plaintiff accuses defendant of mis-citing Dastar for holding that the Lanham Act cannot be used to litigate claims concerning attribution or misattribution of authorship, or claims that are in essence copyright infringement and says that rather Dastar stands for the proposition that the Lanham Act cannot be used to litigate copyright claims on a work which had fallen into the public domain nor over which the originator of the source material no longer had any license, claim or control in any respect over the material. Pl. Opp. 10.

This is simply not the case. The Dastar holding applies both to works still under copyright protection as well as to those that have fallen out of copyright. See 5 McCarthy, § 27:77.1, Author's Opinion on the relevance of copyright ("I do not think that it makes any difference whether the plaintiff's creative material is in or out of copyright or if the defendant's version is an infringement of copyright or not. If defendant falsely claims to be the "origin" of a communicative or expressive product, the copyright status of that product is not relevant to the Lanham Act analysis."); 1 Alexander Lindey & Michael Landau, Lindey on Entertainment, Publishing and the Arts § 2:48 (3d ed. 2006) ("By holding that Section 43(a) does not apply to claims for unaccredited copying without expressly limiting the decision to public domain works,

---

[5] Plaintiff's allegations that Defendant, a well known and reputable picture archive, is involved in some sort of "predatory" business scam based on stealing images and posting them online, are conclusory and unsupported. Unsubstantiated accusations do not prevent courts from granting summary judgment. As explained in its opening brief, Defendant archives publicity material so that publishers, who seek material for a wide range of purposes, such as articles, documentary films and other publications relating to the entertainment industry and popular culture, can have access to this publicly disseminated information. Nothing is misappropriated,

{A062448.DOC/5}

the Court has eliminated all attribution rights under U.S. trademark law for all works, regardless of copyright status.").

Further, even if the subject matter in Dastar had fallen into the public domain, post-Dastar case law has confirmed that the holding was meant to be applied to public domain and non-public domain material. see also Freeplay Music, Inc. v. Cox Radio, Inc., 409 F.Supp.2d 259, 263 (S.D.N.Y.2005) ("The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright.") Smith v. New Line Cinema, 2004 WL 2049232 at *4 (S.D.N.Y. Sept. 13, 2004) (dismissing, based on Dastar, a Lanham Act claim alleging failure to credit the true author of a screenplay); Carroll v. Kahn, 2003 WL 22327299 at *5 (N.D.N.Y. Oct. 9, 2003) ("A Lanham Act claim based on defendant's alleged failure to give plaintiff proper credit as author and/or producer [of the film] ... is foreclosed by Dastar."). It is evident from the string of post-Dastar decisions-none of which dealt with matters that fell into the public domain- finding that the Lanham Act cannot be used to litigate claims concerning attribution or misattribution of authorship that the holding of Dastar applies to scenarios beyond which are contemplated in plaintiff's opposition.

Furthermore, defendant has not appropriated or stolen any images. As stated in its moving brief and undisputed 56.1 Statement, at ¶21, defendant's terms and conditions clearly state that Everett is not the copyright owner in any of the images. Grecco received a credit on every image which he claims he photographed. Therefore there is no false designation of origin.

---

scavenged, purloined or any of the other dramatically inaccurate adjectives employed by Plaintiff.

## CONCLUSION

Defendant's motion for summary judgment should be granted.

Dated:  New York, New York
        August 8, 2008

                                        COWAN DEBAETS ABRAHAMS
                                          & SHEPPARD LLP

                                        By: _____
                                            Toby Butterfield
                                        41 Madison Avenue - 34th Floor
                                        New York, New York 10010
                                        Tel. (212) 974-7474
                                        Fax (212) 974-8474
                                        *Attorneys for Defendant*

10

{A062448.DOC/5}